Robert P. Chadwick, Esq.
Angelina M. Whittington, Esq.
Chadwick Law Firm
3036 W. Bearss Ave.
Tampa, FL 33618
813.264.1500
813.968.1493
rchadlaw@gmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**KELLEY WARE,**

**Plaintiff,**

vs.

**THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY, FLORIDA,
JULIA MCCONNELL, MICHAEL PAUL,
MICHAEL LOPEZ, MELISSA SAMPSON,
SHANNON HARRELL**

**Defendants**

CIVIL ACTION NO.: 8:18-cu-188-T-26mAP

**VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL**

## I.    INTRODUCTION

Plaintiff, Kelley Ware ("Plaintiff"), by and through her counsel, brings this action against The School Board of Hillsborough County, Florida ("SBHC") to enforce Title VII of the Civil Rights Act of 1964 (Title VII) as amended, 42 U.S.C. §§ 2000e–2000e-17, and the Florida Civil Rights Act of 1992 ("FCRA") §760.01(2) Fla. Stat. (2012). Plaintiff also asserts causes of action against Defendants McConnell, Paul, Lopez, Sampson, and Harrell for defamation *per se*, defamation, invasion of privacy, and intentional infliction of emotional distress, among other causes of action, all of which give rise to actual damages, compensatory damages, and, punitive damages. Plaintiff's continuing and aggravated harm includes harm to her reputation in the community as a woman, her reputation in her profession as a school

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 1



teacher, her ability to earn a living and support her children, and her enjoyment of life. Hence, as grounds therefore, Plaintiff, Kelly Ware, by and through her attorneys, hereby files the following complaint against Defendants as captioned above:

## II. JURISDICTION AND VENUE

1.      The Court has jurisdiction over the State's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). The Court has supplemental jurisdiction to adjudicate the Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1367(a). The events, parties, witnesses, and injuries that form the basis of the Title VII claims are the same or related to the events, parties, witnesses, and injuries that form the basis of the FCRA claims.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.      Plaintiff brings this action against Defendant SBHC to redress hostile work environment and retaliation in the work place, pursuant to Title VII, as more fully set forth herein. Plaintiff's damages sought, exclusive of attorneys' fees and costs, exceed the jurisdictional limit required by this Court.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 2

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because the employment practices alleged to be unlawful were committed within the Middle District of Florida.

**5.**      On April 3, 2017, Plaintiff filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission. On June 16, 2017, Plaintiff amended the charge. On October 24, 2017, the U.S. Equal Employment Opportunity Commission issued a notice of right to sue, attached hereto as **Composite Exhibit 1**. Plaintiff received the notice of right to sue letter from the EEOC on October 30, 2017. This action was timely filed thereafter. Plaintiff has fulfilled all administrative prerequisites to filing this action as required by 42 U.S.C. § 2000e-5.

### III. PARTIES

6.      Plaintiff, Kelley Ware, is a natural person, an individual, and a citizen of the United States. She is a citizen of the State of Florida and a resident of Hillsborough County, Florida.  All events giving rise to this cause of action occurred in Hillsborough County, Florida.

7.      Defendant Julia McConnell is a natural person, an individual, and a citizen of the United States. She is a citizen of the State of Florida and a resident of Hillsborough County, Florida.

8.      Defendant Michael Paul is a natural person, an individual, a citizen of the United States. He is a citizen of the State of Florida and a resident of Hillsborough County, Florida.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 3

9.    Defendant Michael Lopez is a natural person, an individual, a citizen of the United States. He is a citizen of the State of Florida and a resident of Hillsborough County, Florida.

10.    Defendant Melissa Sampson is a natural person, an individual, a citizen of the United States. She is a citizen of the State of Florida and a resident of Hillsborough County, Florida.

11.    Defendant Shannon Harrell is a natural person, an individual, a citizen of the United States. She is a citizen of the State of Florida and a resident of Hillsborough County, Florida.

12.    Defendant, The School Board of Hillsborough County, Florida ("SBHC"), was Plaintiff's employer  and is an "employer" for purposes of pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. sec 2000e(b) (et. Seq) and FCRA.

13.    Defendant SBHC is an employer charged with operating, controlling, and supervising all free public schools, including students, staff, and administrators, within Hillsborough County, Florida, pursuant to Article 1X, Section 4(6), Florida Constitution and Section 1001.32, Florida Statutes. SBHC is an "employer" for purposes of 42 U.S.C. § 2000e(b) and FCRA. Pursuant to F.S. § 1001.40, Fla. Stat. (2016), SBHC "shall operate, control and supervise all free public schools within the school district." Art. IX, Section 4(b), Fla. Const. Defendant SBHC is the largest employer in Hillsborough County.  SBHC has more than 25,000 employees.

14.    With respect to Defendants McConnell, Paul, Lopez, Sampson and Harrell, and each allegation of the complaint as to them, all of the Defendants have acted in concert, jointly and severally, thus giving rise to joint and several liability for each of them. Thus, when a

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 4

tortious act is attributed (and pled as) to Defendant McConnell, for example, it also applies to the other defendants.

## IV. ALLEGATIONS

**Plaintiff obtains a position teaching Agriculture at Plant City High School**

15.     Plaintiff began her employment with Hillsborough County School Board as a teacher in 2003.

16.     Plaintiff is well qualified for her position and throughout her teaching career has received satisfactory reviews.

17.     In the calendar year 2016-2017, Plaintiff was assigned to teach agriculture at Plant City High School in Plant City, Florida.

18.     Plaintiff sought and was pleased with this assignment to Plant City High School because it had an active, well respected, agricultural program, was in a small town with a close knit, supportive community, and was near her home.

19.     Plaintiff began teaching at PCHS in August of 2016.

20.     Plaintiff was one of three and a half agricultural teachers at Plant City High School ("PCHS"). (One teacher, unrelated to this litigation, taught part time in the Agricultural Department,  Biotechnology Ag for 2 periods).

21.     Michael Paul Paul") was and is an agricultural teacher at PCHS. He had more seniority than Plaintiff and had been teaching Agriculture at PCHS for many years.

22.     Julia McConnell ("McConnell") was the department head for the agriculture department for PCHS.

23.     Julia McConnell ("McConnell") like Plaintiff, started at PCHS in the 2016-2017 school year. She was hired only days prior to Plaintiff. She lacked Plaintiff's seniority.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 5

24.    The principal at Plant City High School was and is Susan Sullivan ("Sullivan").

25.    At all relevant times, Melissa Sampson ("Sampson") was an agricultural teacher at Simmons Middle School in Hillsborough County.

26.    The Hillsborough County School District Superintendent was and is Jeff Eakins (Eakins").

27.    The position of teaching agriculture is unique because it requires the agricultural teachers to handle small and large livestock and attend events away from the school campus throughout the county, including, for example, the Hillsborough County Fair, the Florida State Fair, and the Florida Strawberry Festival.

28.    At these countywide events, the agriculture teachers from Hillsborough County middle and high schools come together with their students and their livestock to teach and to allow the students to participate in county wide and state wide competitions.

29.    The agricultural teachers at Plant City High School also work closely with the Future Farmers of America ("FFA") organization.

30.    Michael Lopez ("Lopez") was a school volunteer and the treasurer of the Plant City FFA Alumni Association. He has since been terminated from that position.

31.    Lopez is an owner, officer, director, and manager of Southside Stores, Inc., his family's business, that includes a local farm related business ("Southside") in Plant City, Florida, where many PCHS students and their parents frequently shop.

32.    Though Lopez was a school volunteer at PCHS through the FFA, there was certainly a commercial advantage to him doing so given the nature of his family business.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 6

33.    At all relevant times, Richard "Richie" Longanecker ("Longanecker") was Plaintiff's boyfriend and a local cattle rancher at Big Timber Cattle Co., in Lithia, Florida. Longanecker married Plaintiff on November 11, 2017.

34.    Longanecker also volunteered his time with high school students as part of the local FFA program.

### McConnell, Paul, Sampson, and Lopez create a group text targeting Plaintiff

35.    Beginning in or about October, 2016, approximately two months after Plaintiff began working at PCHS, a group of three Hillsborough County school teachers, McConnell, who is Plaintiff's Department Supervisor, Paul, Plaintiff's fellow agricultural teacher, and Sampson, an agricultural teacher from another local middle school, along with FFA volunteer, Lopez, (collectively, the "Group") engaged in group text messages for a period of months that included cruel, baseless, lewd, lascivious, shocking, and grossly inappropriate sexual discussions about Plaintiff (the "Group Texts").

36.    The Group Texts spanned continuously over days, weeks, and months from at least October 2016 through at least January 2017.

37.    The Group Texts were shared among the Group during business hours, after hours, and on weekends.

38.    In the Group Texts, "Me" is Julia McConnell (as it was her phone from which all of the messages were retrieved); "Mo" is Melissa Sampson; "Paul" is Michael Paul; and "Lopez" is Michael Lopez. In the Group Texts, Plaintiff's boyfriend, Richie Longanecker is referred to as "Big Timber" and "Dinglehopper."

39.    Both Michael Paul and Julie McConnell admitted the authenticity of the Group Texts, (which were admitted into evidence based upon their sworn testimony) in hearings in

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 7

Hillsborough County on Plaintiff's petitions for restraining orders against Paul and McConnell. *Ware v. McConnell*, Hillsborough County Case No. 17-DR-003592. *Ware v. Paul*, Hillsborough County Case No. 17-DR-003590.

40.     Michael Paul sent a purported apology text to Plaintiff on January 29, 2017, in which he admitted to the authenticity of the text messages and the vile and obscene nature of the text messages about Plaintiff, while simultaneously trying to convince Plaintiff that the text messages do not conclusively confirm he is having an affair with McConnell.

41.     At the time of the Group Texts, both Paul and McConnell were married. They were not married to each other.

42.     The Group Texts, particularly the ones about Plaintiff, are so vulgar and offensive that they shock the conscience. They are graphic, lewd, lascivious, and obscene.

43.     The Group Texts are written, primarily by Hillsborough County School teachers, the same teachers entrusted with the education and nurturing of Hillsborough County students.

**The Ware Photo**

44.     The catalyst of Plaintiff becoming the brunt of the Group's attention was a single, unflattering photograph of Plaintiff taken by a parent, Defendant, Shannon Harrell, in the presence of PCHS Department Chair, McConnell, without her knowledge.

45.     On October 29, 2016, Plaintiff was required as part of her job duties to attend the Hillsborough County Fair Livestock Show. On that same day, students from Plant City High School were showing their livestock.

46.     Plaintiff was appropriately dressed in jeans, a tee shirt and boots. She squatted down and leaned forward to work under a cow. The position she was in, squatting down and

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 8

bending forward in order to do her job, resulted in a portion of the top of her intergluteal cleft being inadvertently exposed.

47.     Plaintiff's Department Supervisor at PCHS, Julia McConnell was positioned behind her, as was a student's parent, Shannon Harrell.

48.     Neither Plaintiff's Department Head, McConnell, nor the parent, Harrell, acted in an appropriate manner and advised Plaintiff to adjust her clothing.

49.     Rather than being professional or appropriate, PCHS Department Chair, McConnell, watched as Harrell pulled out her smart phone to take a picture, at which point, McConnell alleges she "walked away."

50.     McConnell did nothing to protect her subordinate and prevent a blatant invasion of Plaintiff's privacy at a school mandated function.

51.     At all times, both McConnell and Harrell knew that Plaintiff was unaware the photograph of her had been taken by Harrell.

52.     At no time did Plaintiff consent to having her photograph taken while her intergluteal cleft was exposed. (the "Ware Photo"). Plaintiff never would have consented to such a photograph.

53.     Harrell willfully and maliciously published the Ware Photo to Michael Lopez.

54.     Based upon information and belief, Harrell willfully and maliciously published the Ware Photo to others in the Plant City community.

55.     Lopez received the Ware Photo from Harrell.

56.     Rather than delete the Ware Photo as he should have, Lopez, like Harrell, willfully and maliciously published the Ware Photo. Lopez published the Ware Photo to an

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 9

entire group of Hillsborough County teachers, including, McConnell, Paul, and Sampson, on some date prior to December 10, 2016.

### The Lewd, Obscene, and Sexually Graphic Group Texts about Plaintiff

57.     In the Group Text, Lopez first references the photo to the Group, which it appears he previously shared, as "#LONGASSCRACK" on 12/10/16 at 7:56PM.

58.     Plaintiff has four people in her department at PCHS, and only three who work in that department full time, including herself. McConnell and Paul, both, on the evening of December 10, 2016, are discussing her body parts from a photo that should not have been taken or shared, and collectively, they are evaluating whether her body parts are "sexy," and whether Michael Paul "wants some" of Plaintiff.

59.     On the same night of December 10, 2016, the conversation in the Group Text continues to include references to Plaintiff, her boyfriend, and lewd and lascivious sex acts that the Group discusses engaging in with Plaintiff, culminating with Department Chair McConnell suggesting that Michael Paul has the necessary gear (artificial insemination lube, leather gloves, long plastic artificial insemination gloves, etc.) at school to engage in sex with Plaintiff in the manner discussed in the text messages. Michael Paul responds, "You know I do."

60.     Michael Paul then leaves the Group Text to go photograph a gallon of artificial insemination lube.

61.     On December 21, 2016, the malicious Group once again targets Plaintiff. Plaintiff's Department Chair, McConnell, posts several photos of Plaintiff from her facebook page on the Group Text  with the sarcastic words "Your welcome."

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 10

62.     On December 21, 2016, Lopez then demeans Plaintiff's ability to perform her job. Lopez follows McConnell's lead and begins to demean Plaintiff, this time focusing on her ability to perform her job after viewing a photo of a PCHS student with a steer.

63.     Also on the evening of December 21, 2016, Lopez posts a graphic photo of Teacher Michael Paul with his arm elbow deep inside a cow's rectum while artificially inseminating the cow. In the photo, Teacher Michael Paul is smiling and giving a thumbs up to the photographer.

64.     Lopez writes under the photo to the group "Michael wants to do this to Kelly's crack!!!#GOALS"

65.     To which fellow teacher Michael Paul responds: "Don't knock it til you've tried it."

66.     Sampson joins in stating, "I could swing that way, but not with her."

67.     And Lopez joins in with, "Plenty of Lube left over."

68.     On December 21, 2016 at 6:11PM, Lopez publishes the Ware Photo to the Group, and below it he writes, "Here is the mental!!!"

69.     Once again the group engages in a conversation focused on Plaintiff's body, sex with her, and her Department Chair, McConnell states "I would send a pic to replace that…but I don't want to get in trouble." ("Ware Photo 2") Apparently, in addition to the initial Ware Photo taken by Harrell, McConnell has taken an unflattering photo of Plaintiff without her knowledge.

70.     McConnell and Plaintiff do not socialize; the only place McConnell could take a photo of Plaintiff would be at school or at a school function.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 11

71.     Michael Paul's first response upon seeing the Ware Photo published by Lopez is "Count me in!"

72.     Lopez says in response to the Ware Photo, "Arms length gloves, lots of lube, and semen!!! Bring it on if you could handle!!!"

73.     From December 21 through December 23, the Group of teachers and Lopez continue to graphically discuss sex, and lesbianism, to make disparaging remarks about gays, and make jokes about African Americans.

74.     On the afternoon of Christmas Eve, 2016, the Group again targets Plaintiff, repeatedly ridiculing her body, referencing her in an explicit, demeaning, and sexual manner.

75.     On the evening of January 6, 2017, the Group discusses pornography sites and vibrators.

76.     On January 6, 2017, PCHS Teacher Michael Paul shares with the group that he watched a PCHS student taking more photographs of Plaintiff at school , "this morning."

77.     January 6, 2017, was a school day and PCHS Teacher Michael Paul, like PCHS Department Chair McConnell, watched and did nothing to prevent a PCHS student from taking compromising photographs of Plaintiff without her knowledge.

78.     The photos taken by "Gresham," like the photos taken by Harrell, were solely taken to ridicule Plaintiff. These photos were taken in the presence of a PCHS teacher, who did nothing to stop the student.

79.     On the night of January 6, 2017, the Group writes:

> Michael Paul: Gresham [PCHS student] was taking pics of Kellys belly
> hanging out of her shirt this morning
> Me: No he wasn't?????
> Michael Paul: Yep. I was there **(Ware Photo 3)**

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 12

Me: Crack?

Michael Paul: No front FUPA  [Front upper pubic area]

Me: Shut your mouth!!!!!! No freaking way

Michael Paul: Really just belly

Me: Good gosh Almighty

Mike Lopez: Lol....

Michael Paul: While they were working her heifers

Michael Paul: It was cute

Me: She sweaty. You should've offered to help wipe her sweat

Mike Lopez: We will have these pics tomorrow after MP [Michael Paul] gets them from Gresham

Michael Paul: Dew drops falling from her happy trail

Michael Paul: With my tongue

Michael Paul: Nope nope. I take it back

Mike Lopez: That's a hell of a crack. Long way down to your tongue

Michael Paul: You betcha

**Plaintiff receives Group Texts and attempts to report harassment to her principal**

80.    On or about Sunday, January 29, 2017, McConnell's husband discovers the Group Texts and is shocked by the dialogue regarding Plaintiff. He contacts Plaintiff and forwards the Group Texts to her.

81.    After reading all the emails on the night of January 29, 2017, Plaintiff felt humiliated, violated, and threatened by her co workers actions and words.

82.    She cried and did not want to return to PCHS to work with these teachers in her own department who had treated her like a sexual object and threatened to engage in sexual acts with her at school.

83.    She had a reasonable fear that she was being stalked by her fellow teachers, who were photographing her without her knowledge, or standing by as others photographed her and asking for copies of the photos.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 13

84. Plaintiff did not know that the Ware Photo had been taken. She was shocked and embarrassed and could not understand why McConnell, her Department Chair, did not stop Harrell from taking the photo of her.

85. She was disturbed to discover that McConnell had additional photos (Ware Photo 2) of her that could be shared with the Group at a later date.

86. Plaintiff did not know that the Ware Photo 3 had been taken. She was disturbed and felt violated. Plaintiff believed her co workers should have prevented the photos from being taken, not asked for copies.

87. In a separate set of text messages, Paul admits to McConnell that he, too, has taken photo(s) of Plaintiff.

88. On the evening of January 29, 2017, Plaintiff reviewed the Group Texts several time. Plaintiff became physically ill as a result of the mental anguish she suffered while reading the graphic Group Texts written about her by her peers and supervisor.

89. At all times, McConnell, Paul, Sampson, and Lopez knew the Group Texts could be published. Repeatedly throughout the group text messages, the Group texts to one another "delete these text messages" and "I don't want to get in trouble."

90. McConnell failed to heed her own advice.

91. Plaintiff, reasonably did not want to report to McConnell as her supervisor or work with (or be alone with) McConnell or Paul.

92. Plaintiff reasonably felt violated, threatened, and in fear.

93. Plaintiff did nothing to illicit the demeaning and sexual conduct directed at her by her peers.

94. Plaintiff was and is the victim. She engaged in no wrongdoing whatsoever

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 14

### Day 1 – PCHS Principal Sullivan fails to comply with Anti-Harassment Policy

95.     When Plaintiff returned to work the next day, Monday, January 30, 2017, Plaintiff expected PCHS administrators to take immediate action to protect her from McConnell, Paul, and Lopez.

96.     Plaintiff arrived at work early on January 30, 2017, and went to the principal's office, Susan Sullivan's office, to report the Group Texts and her reasonable fear of her peers resulting from her review of the Group Texts.

97.     At the time Plaintiff met with PCHS Principal Susan Sullivan, Plaintiff was engaging in protected activity, reporting what she reasonably perceived to be illegal sexual harassment directed to her, verbal (Group Texts) and physical conduct (Photographing Plaintiff) of a sexual nature directed towards her. Plaintiff was intimidated by McConnell and Paul.

98.     Plaintiff was reporting to her administrator in accordance with SBHC's sexual harassment reporting policies.

99.     Susan Sullivan briefly and dismissively reviewed the Group Texts on Plaintiff's telephone. Susan Sullivan told Plaintiff she did not have time to meet with her to discuss the harassment further. Principal Sullivan had more important items on her agenda. She advised Plaintiff that she had to leave to attend previously scheduled meetings. She said she would meet with Plaintiff on January 31, 2017.

100.    Plaintiff objected and told PCHS Principal Susan Sullivan that she is afraid to be around McConnell and Paul and would like them immediately sent home.

101.    PCHS Principal Susan Sullivan refused to send the offenders home and dismissively directed Plaintiff to "go to her room" and "try to stay away from them."

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 15

102.   At all relevant times, Principal Sullivan knew that McConnell and Paul's classrooms were on either side of Plaintiff's room. She could not get to her classroom without passing one or both of them. Because of the geographic location of her classroom and their shared agricultural facilities, Plaintiff could not "stay away from them."

103.   On January 30, 2017, PCHS Principal Susan Sullivan was obligated under the Section 5517 of Hillsborough County's Anti-Harassment Policy ("AHP") to immediately report the unlawful harassment of Plaintiff by McConnell, Paul, Sampson, and FFA volunteer, Lopez.

104.   On January 30, 2017, PCHS Principal Sullivan disregarded, failed to investigate adequately, or delayed the investigation of unlawful harassment of Plaintiff.

105.   PCHS Principal Sullivan had a responsibility to report the unlawful harassment charges on that same day as part of her supervisory duties in accordance with the AHP.

106.   On January 30, 2017, Principal Sullivan failed to comply with the AHP to protect Plaintiff.

107.   Once the Board learned of her failure to report on January 30, 2017, under the AHP, the Board was required to "take immediate steps to impose disciplinary action on her.

**Day 2- PCHS Principal Sullivan fails to comply with Anti- Harassment Policy.**

108.   The next day, January 31, 2017, despite her representations to the contrary, Principal Sullivan failed to meet with Plaintiff so Plaintiff could fully report the harassment.

109.   No one from SBHC reached out to Plaintiff because Principal Sullivan had failed to convey Plaintiff's complaints to Professional Standards.

110.   Plaintiff sent an email to PCHS Sullivan telling her that it was imperative that they meet.  Principal Sullivan refused to respond.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 16

111.    Plaintiff sought out Principal Sullivan and located her in the Mall area of PCHS. Plaintiff again emphasized the urgency of her need to meet to report.

112.    Principal Sullivan summarily undermined and dismissed her concerns, advising Plaintiff to "go fill out your school survey, bring it to my office, and then I will meet with you."

113.    Plaintiff did as instructed. She completed her school survey, reported to Principal Sullivan's office, and was advised that Principal Sullivan was in a meeting, but she should wait.

114.    Plaintiff waited for half an hour for an audience with Principal Sullivan. After 30 minutes of waiting, Plaintiff was required to return to her classroom to prepare for her class.

115.    On January 31, 2017, PCHS Principal Sullivan disregarded, failed to investigate adequately, or delayed the investigation of unlawful harassment of Plaintiff.

116.    PCHS Principal Sullivan had a responsibility to report the unlawful harassment charges on that same day as part of her supervisory duties in accordance with the AHP.

117.    On January 31, 2017, Principal Sullivan failed to comply with the AHP to protect Plaintiff.

118.    Once the Board learned of her failure to report on January 31, 2017, under the AHP, the Board was required to "take immediate steps to impose disciplinary action on her." Based upon information and belief, the Board did not discipline Principal Sullivan.

**Day 3- PCHS Principal Sullivan is forced by District to meet with Plaintiff**

119.    On February 1, 2017, Principal Sullivan, again, makes no effort to meet with Plaintiff, who sends an email to Principal Sullivan, again, stating that the sexual harassment,

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 17

bullying, and hostile work environment created by McConnell and Paul cannot wait another day. Plaintiff asked that Principal Sullivan meet with her immediately.

120. On February 1, 2017, Principal Sullivan, again, did not respond to Plaintiff.

121. Plaintiff reached out to below signed counsel for assistance. Counsel first called the School Superintendent and was directed to Area 6, which governs PCHC.

122. Counsel called Area 6 and demanded Principal Sullivan meet with Plaintiff regarding her harassment complaints.

123. As a result of the direct order from Area 6, Susan Sullivan met with Plaintiff on February 1, 2017, and allowed Plaintiff sufficient time to review what Plaintiff reasonably believed was illegal harassment by her peers and others.

124. Plaintiff again asked that Principal Sullivan suspend McConnell and Paul so she was not forced to work with them. Principal Sullivan again refused.

125. On February 1, 2017, after being forced by Area 6 to meet with Plaintiff, Principal Sullivan reported the harassment to Professional Standards.

126. Though it would seem logical for an investigation of harassment to start with the victim, no one from Professional Standards interviewed Plaintiff about her harassment.

127. Plaintiff was notified that the investigation was closed on or about February 21, 2017, at which time Plaintiff again objected that no one had interviewed her, the victim, regarding her complaint. On that same day, after objecting that the claim was closed prior to her being interviewed, Plaintiff was interviewed regarding the claim.

**Plaintiff is forced to work in a Hostile Work Environment
with McConnell and Paul**

128.   From February 1, 2017, forward, despite SBHC's actual knowledge of McConnell and Paul's obscene and sexually graphic conversations about Plaintiff, including their conversations about sexual assault and battery of her person and references to those actions taking place at school, Plaintiff was required to report to work, day after day, in a classroom located in the same proximity as McConnell and Paul's, to share agricultural facilities with them, and to report to McConnell as her direct supervisor.

129.   A reasonable person in the position of Plaintiff would consider that work environment hostile.

130.   On February 2, 2017 and February 3, 2017, Plaintiff continued to report to Principal Sullivan that she felt the environment in which she was forced to work was hostile; that she did not want to report to McConnell, and that she was afraid.

131.   Principal Sullivan refused to respond to Plaintiff's reasonable concerns.

132.   At all times in 2017, over Plaintiff's repeated objections, McConnell remained Plaintiff's immediate supervisor.

133.   Because Principal Sullivan refused to take any action whatsoever to protect Plaintiff from McConnell and Paul, they were empowered.

134.   McConnell and Paul began actively spreading rumors about Plaintiff with students and who would make joking comments under their breath or skip her class completely and go to McConnell and Paul's class.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 19

135.    Plaintiff was placed in the untenable position of having to justify her protected action of reporting what she deemed as harassment to her own students as a result of McConnell and Paul's inappropriate disclosures to those students.

136.    Student questions about her "complaint" and student opinions about her reporting interfered with and negatively impacted Plaintiff's ability to teach.

137.    Plaintiff reported McConnell and Paul's improper discussions with students to PCHS Principal Sullivan, who, again, took no action to protect Plaintiff.

138.    Plaintiff suffered significant anxiety, depression, and physical anomalies as a result of the stressful situation she was forced to endure.

139.    From February 1, 2017, forward, Plaintiff's ability to perform her job duties in a meaningful way was compromised or destroyed by the actions of her peers and administration's failure to remove the offenders.

140.    Because McConnell and Paul were disclosing the nature of the complaints with students that Plaintiff taught, Plaintiff's credibility with the students was compromised.

141.    McConnell and Paul were purposefully humiliating Plaintiff in retaliation for her engaging in protected activity.

142.    Plaintiff was constantly watching students and her fellow teachers to determine whether they were taking photographs of her without her permission.

143.    Plaintiff could not interact meaningfully with her department because the only full time teachers in her department were her harassers, and at least one of them remained her superior.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 20

**Plaintiff obtains Temporary Restraining Orders Against McConnell and Paul**

144.    In or about the third week of February, 2017, SBHC Area 6 Administrator Sharon Morris told Plaintiff that SBHC was not going to do anything about Plaintiff's complaint. She offered to transfer Plaintiff to another school.

145.    Plaintiff objected.

146.    Plaintiff asked Ms.Morris how the investigation could be closed when she [Plaintiff] was never interviewed.

147.    Plaintiff also demanded that McConnell and Paul be transferred, as opposed to her. Sharon Morris told Plaintiff that was not possible, without further explanation.

148.    Plaintiff then asked to meet with Superintendent Jeff Eakins. Sharon Morris told her that was not possible.

149.    Later that same day, SBHC, Mr. Bush, called and advised Plaintiff that Plaintiff received misinformation from Sharon Morris and that they would interview me on February 21, 2017.

150.    Because it became apparent that SBHC was going to do nothing to protect Plaintiff from McConnell and Paul, on or about March 6, 2017, Plaintiff sought and obtained temporary restraining orders against McConnell and Paul in Hillsborough County.

151.    Hillsborough County Sheriff's Officers served the Restraining Orders McConnell and Paul at PCHS on March 9, 2017.

152.    Principal Sullivan was not happy that the Restraining Orders were served on McConnell and Paul at PCHS; in retaliation, Principal Sullivan sent Plaintiff a threatening text message advising her that if any teacher caused any problems [at the Strawberry Festival- a

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 21

required event for Agricultural teachers] that that teacher would be banned from the festival for the rest of the year.

153.   Plaintiff reasonably believed that Principal Sullivan sent this text in retaliation for Plaintiff engaging in protected activity – reporting what she perceived to be illegal harassment and obtaining restraining orders to protect her from the harassers because SBHC failed or refused to do so.

**Plaintiff is forced to attend FFA Meetings with Harassers**

154.   On or about March 28, 2016, Plaintiff is required to attend an FFA meeting.

155.   Prior to the meeting, Plaintiff advised her principal and others in administration that she was afraid to attend the meeting with McConnell and Lopez. She asked that they be barred from attending. SBHC stated that it would not prevent McConnell and Lopez from attending, but assured Plaintiff that her Principal would be there.

156.   The FFA meeting began at 5:30PM. Principal Sullivan failed to show up until after 6:55PM. Prior to that time, Sampson purposefully and intentionally approached Plaintiff, and "stared her down" in an intimidating manner.

157.   Plaintiff met with Principal Sullivan again on March 29, 2017, (over her objection) and advised her that she continued to feel threatened and intimidated and her ability to teach was compromised. Plaintiff told her that Sampson had intentionally engaged in threatening behavior at the last FFA event and should not be permitted to attend FFA events where Plaintiff was present.

158.   In response to Plaintiff's reasonable and well-founded concerns, remarkably, PCHS Susan Sullivan told Plaintiff that she had asked SBHC "to get rid of all three of them," "to clean house," meaning McConnell, Paul and Plaintiff, herself.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 22

159.   Plaintiff reminded Principal Sullivan that she was a victim who properly reported harassment.

160.   Plaintiff asked Principal Sullivan to repeat what she said.

161.   Principal Sullivan, again, repeated that she had asked SBHC to get rid of all three of the agriculture teachers, including Plaintiff.

162.   Assistant Principal Leesburg was present in the room during this discussion and heard Principal Sullivan twice say she sought to have Plaintiff's employment at PCHS terminated.

163.   PCHS Principal Sullivan then told Plaintiff that she was "tired of the drama."

164.   Principal Sullivan told Plaintiff that SBHC was going to do nothing about Plaintiff's complaint.

165.   Plaintiff told Principal Sullivan that she felt like not only she [Plaintiff] was at risk, but so were the students at Plant City High School.

166.   Plaintiff reported to Principal Sullivan that she should consider the safety of the students as well as Plaintiff's own complaints.

167.   Plaintiff reminded Principal Sullivan that she was a victim.

168.   As a result of this conversation with Principal Sullivan, Plaintiff was reasonably concerned that she was going to be terminated for engaging in protected activity at the request of her own principal.

169.   Plaintiff became ill and could not return to work for days following this discussion with Principal Sullivan as a result of her anxiety. Plaintiff missed numerous days following this conversation with Principal Sullivan.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 23

170. On April 7, 2017, at the FFA Banquet, Plaintiff was uncomfortable presenting awards to her students because McConnell and Paul were permitted to stand together in the front and present their awards. Principal Sullivan made no accommodation to have them step down or move away so Plaintiff could present awards to her student without standing beside her harassers.

171. Principal Sullivan also banned Plaintiff's boyfriend from attending the event, without any basis. Michael Lopez attended the event.

172. Plaintiff was approached by angry parents after the event who wanted to know why her students did not receive gift cards. Plaintiff was once again in the awkward position of having to explain to parents of her students that her principal would not assist her in avoiding close proximity to her harassers, thus preventing her from meaningfully participating in the awards ceremony. Plaintiff asked Principal Sullivan to explain the circumstances to the upset parent and Principal Sullivan refused.

173. Plaintiff was repeatedly being treated by Principal Sullivan as a trouble maker and being deprived of the opportunities afforded to the very individuals who harassed her.

**SBHC Hostile Work Environment and Retaliation culminates in Elimination of Plaintiff's Position at PCHS**

174. Without warning or explanation, on April 11, PCHS Principal sent an email to Plaintiff advising her that her position was "eliminated."

175. Plaintiff was forced to select a position at a different school in SBHC by May 5, 2017, or she would be terminated.

176. Plaintiff discussed the matter with Mark West and Craig Horstman from SBHC who told her to choose a new position at a different school or be terminated.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 24

177.    Moreover, Plaintiff learned that the Department Chair position was open at PCHS and she was not offered the opportunity to interview for that position. Rather, she was summarily advised that her position was "eliminated."

178.    Neither Paul nor McConnell's positions were "eliminated" from PCHS.

179.    Plaintiff was understandably upset that she was effectively being ousted from a school where she wanted to teach while her harassers permitted by the administration to continue teaching there.

180.    SBHC did not have a nondiscriminatory basis for terminating Plaintiff's position. The basis she was provided for the elimination of her position was a mere pretext.

181.    Principal Sullivan made clear in the meeting on March 29, 2017, that she wanted Plaintiff out of her school.

182.    Principal Sullivan found a way to orchestrate the result she sought, removal of Plaintiff, under the guise of legitimate business activities.

183.    Plaintiff missed numerous days of work as a result of the anxiety related to the failure of SBHC to act on her behalf. Despite her request to use comp time, Plaintiff was forced by SBHC to use her personal days and was later reprimanded for missing too much work.

184.    Plaintiff was forced to work in another, less desirable, Hillsborough County public school for the 2017-2018 school year and on January 20, 2018, Plaintiff resigned her position as a result of the hostile work environment and retaliation described above.

185.    Plaintiff is not a public figure. At all material times, she acted individually and in furtherance of her business.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 25

186.    Plaintiff has not sought or acquired any position of public power or influence which would give him the ability to protect himself apart from the courts within the meaning of *New York Times v. Sullivan* 376 U.S. 254 (1964).

187.    Plaintiff is not a public figure within the meaning of *New York Times v. Sullivan* or its progeny.

## V. 1st CAUSE OF ACTION
### (SBHC Violation of Title VII; Hostile Work Environment)

188.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

189.    Through their actions described above, SBHC has discriminated against Plaintiff, a female worker, with respect to the compensation, terms, conditions, or privileges of employment because of sex, in violation of 42 U.S.C. Sec. 2000e-2(a)(1).

190.    Plaintiff is part of a protected group.

191.    Plaintiff was subject to unwelcome harassment.

192.    The harassment was based upon her membership in the protected group.

193.    The harassment was sufficiently pervasive to affect a term, condition, privilege of employment; and

194.    SBHC knew or should have known about the harassment but failed to take prompt corrective action.

## VI. 2nd CAUSE OF ACTION
### (SBHC Violation of Title VII; Retaliation)

195.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

196.    Through their actions described above, SBHC has discriminated against Plaintiff, a female worker, for opposing unlawful or discriminatory employment practices, in violation of 42 U.S.C. Sec. 2000e-3(a).

197.    Plaintiff, an employee of SBHC, engaged in an activity protected by Title VII.

198.    SBHC imposed upon the employee some adverse employment actions, as described above.

199.    SBHC imposed the adverse employment action because Plaintiff engaged in conduct protected by Title VII.

200.    SBHC has no legitimate, nondiscriminatory reason for the adverse employment action.

## VII. 3rd CAUSE OF ACTION
### (SBHC Violation of FCRA; Hostile Work Environment)

201.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

202.    Through their actions described above, SBHC has discriminated against Plaintiff, a female worker, with respect to the compensation, terms, conditions, or privileges of employment because of sex, in violation of FCRA, Fla. Stat. 760.10.

203.    Plaintiff is part of a protected group.

204.    Plaintiff was subject to unwelcome harassment.

205.    The harassment was based upon her membership in the protected group.

206.    The harassment was sufficiently pervasive to affect a term, condition, privilege of employment; and

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 27

207.   SBHC knew or should have known about the harassment but failed to take prompt corrective action.

## VIII. 4ᵗʰ CAUSE OF ACTION
### (SBHC Violation of FCRA; Retaliation)

208.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

209.   Through their actions described above, SBHC has discriminated against Plaintiff, a female worker, for opposing unlawful or discriminatory employment practices, in violation of in violation of FCRA, Fla. Stat. 760.10.

210.   Plaintiff, an employee of SBHC, engaged in an activity protected by FCRA.

211.   SBHC imposed upon the employee some adverse employment actions, as described above.

212.   SBHC imposed the adverse employment action because Plaintiff engaged in conduct protected by FCRA.

213.   SBHC has no legitimate, non discriminatory reason for the adverse employment action.

## IX. PRAYER FOR RELIEF AS TO SBHC

214.   WHEREFORE, as to Defendant SBHC, Plaintiff prays that the Court:

    a.   Declare the discriminatory practices of SBHC violated Title VII and FCRA;

    b.   Award damages or other appropriate monetary relief to Plaintiff in an amount to be proven at trial, including actual and punitive damages;

    c.   Award Plaintiff the costs of suit including reasonable attorneys' fees; and

    d.   Award such additional relief as the interests of justice may require.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 28

## X. 5th CAUSE OF ACTION
### (McConnell;  Defamation *per se*)

215.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

216.    Plaintiff is a private person.

217.    Through her actions described above, Defendant McConnell knowingly and intentionally published to others false and defamatory statements that hurt Plaintiff in her profession as a teacher and that imputed serious sexual misconduct to her.

218.    McConnell's defamatory statements about Plaintiff were so injurious and outrageous as to rise to the level of *defamatory per se*.

219.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XI. 6th CAUSE OF ACTION
### (McConnell; Defamation)

220.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

221.    Plaintiff is a private person.

222.    Through her actions described above, Defendant McConnell negligently published to others false and defamatory statements concerning Plaintiff without reasonable care as to the truth or falsity of those statements that resulted in actual damage to Plaintiff.

223.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XII. 7th CAUSE OF ACTION
### (McConnell; Invasion of Privacy)

224.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

225.    Through her actions described above, Defendant McConnell invaded Plaintiff's privacy.

226.    McConnell knowingly and intentionally published to others private facts about the life of Plaintiff, including but not limited to photographs of Plaintiff.

227.    The private facts published by McConnell about Plaintiff would be highly offensive to a reasonable person, were offensive, and were not of public concern.

228.    Plaintiff was damaged as a result of invasion of privacy and is entitled to damages to be proven at trial.

## XIII. 8th CAUSE OF ACTION
### (McConnell; Intentional Infliction of Emotional Distress)

229.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

230.    Through her actions described above, Defendant McConnell's conduct was intentional or reckless. She intended her behavior when she knew or should have known that emotional distress would likely result as to Plaintiff;

231.    At all times McConnell knew or should have known that her Group Texts could be discovered as evidenced by the repeated references to deleting the text messages as well as her statements about not wanting to get in trouble for her text messages.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 30

232.   McConnell's conduct was so outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community;

233.   As a direct and proximate result of McConnell's conduct, Plaintiff suffered and continues to suffer emotional distress;

234.   As a direct and proximate result of McConnell's conduct, Plaintiff's emotional distress was and is severe.

235.   Plaintiff is entitled to damages to be proven at trial.

### XIV. 9th CAUSE OF ACTION
### (McConnell; Negligent Infliction of Emotional Distress)

236.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

237.   Through her actions described above, Defendant McConnell's conduct was negligent. She knew or should have known that emotional distress would likely result as to Plaintiff;

238.   As a direct and proximate result of McConnell's conduct, Plaintiff suffered and continues to suffer emotional distress that is serious or severe;

239.   Plaintiff is entitled to damages to be proven at trial.

### XV. 10th CAUSE OF ACTION
### (Paul;  Defamation *per se*)

240.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

241.   Plaintiff is a private person.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 31

242.    Through his actions described above, Defendant Paul knowingly and intentionally published to others false and defamatory statements that hurt Plaintiff in her profession as a teacher and that imputed serious sexual misconduct to her.

243.    Paul's defamatory statements about Plaintiff were so injurious and outrageous as to rise to the level of *defamatory per se.*

244.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XVI. 11th CAUSE OF ACTION
### (Paul; Defamation)

245.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

246.    Plaintiff is a private person.

247.    Through his actions described above, Defendant Paul negligently published to others false and defamatory statements concerning Plaintiff without reasonable care as to the truth or falsity of those statements that resulted in actual damage to Plaintiff.

248.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XVII. 12th CAUSE OF ACTION
### (Paul; Invasion of Privacy)

249.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

250.    Through his actions, Defendant Paul invaded Plaintiff's privacy.

251.    Paul knowingly and intentionally published to others private facts about the life of Plaintiff, including but not limited to photographs of Plaintiff.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 32

252.    The private facts published by Paul about Plaintiff would be highly offensive to a reasonable person, were offensive, and were not of public concern.

253.    Plaintiff was damaged as a result of invasion of privacy and is entitled to damages to be proven at trial.

## XVIII. 13th CAUSE OF ACTION
### (Paul; Intentional Infliction of Emotional Distress)

254.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

255.    Through his actions described above, Defendant Paul's conduct was intentional or reckless. He intended his behavior when he knew or should have known that emotional distress would likely result as to Plaintiff;

256.    Paul's conduct was so outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community;

257.    As a direct and proximate result of Paul's conduct, Plaintiff suffered and continues to suffer emotional distress;

258.    As a direct and proximate result of Paul's conduct, Plaintiff's emotional distress was and is severe.

259.    Plaintiff is intended to damages to be proven at trial.

## XVIX. 14th CAUSE OF ACTION
### (Paul; Negligent Infliction of Emotional Distress)

260.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

261.    Through his actions described above, Defendant Paul's conduct was negligent. He knew or should have known that emotional distress would likely result as to Plaintiff;

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 33

262.    As a direct and proximate result of Paul's conduct, Plaintiff suffered and continues to suffer emotional distress that is serious or severe;

263.    Plaintiff is entitled to damages to be proven at trial.

## XX. 15th CAUSE OF ACTION
### (Lopez  Defamation *per se*)

264.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

265.    Plaintiff is a private person.

266.    Through his actions described above, Defendant Lopez knowingly and intentionally published to others false and defamatory statements that hurt Plaintiff in her profession as a teacher and that imputed serious sexual misconduct to her.

267.    Lopez's defamatory statements about Plaintiff were so injurious and outrageous as to rise to the level of *defamatory per se*.

268.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XXI. 16th CAUSE OF ACTION
### (Lopez; Defamation)

269.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

270.    Plaintiff is a private person.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 34

271.   Through his actions described above, Defendant Lopez negligently published to others false and defamatory statements concerning Plaintiff without reasonable care as to the truth or falsity of those statements that resulted in actual damage to Plaintiff.

272.   As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XXII. 17th CAUSE OF ACTION
### (Lopez; Invasion of Privacy)

273.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

274.   Through his actions described, Defendant Lopez invaded Plaintiff's privacy.

275.   Lopez knowingly and intentionally published to others private facts about the life of Plaintiff, including but not limited to photographs of Plaintiff.

276.   The private facts published by Lopez about Plaintiff would be highly offensive to a reasonable person, were offensive, and were not of public concern.

277.   Plaintiff was damaged as a result of invasion of privacy in an amount to be proven at trial.

## XXIII. 18TH CAUSE OF ACTION
### (Lopez; Intentional Infliction of Emotional Distress)

278.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

279.   Through his actions described above, Defendant Lopez's conduct was intentional or reckless. He intended his behavior when he knew or should have known that emotional distress would likely result as to Plaintiff;

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 35

280.    Lopez's conduct was so outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community;

281.    As a direct and proximate result of Lopez's conduct, Plaintiff suffered and continues to suffer emotional distress;

282.    As a direct and proximate result of Lopez's conduct, Plaintiff's emotional distress was and is severe. Plaintiff is entitled to damages in an amount to be proven at trial.

### XXIV. 19th CAUSE OF ACTION
### (Lopez; Negligent Infliction of Emotional Distress)

283.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

284.    Through his actions described above, Defendant Lopez's conduct was negligent. He knew or should have known that emotional distress would likely result as to Plaintiff;

285.    As a direct and proximate result of Lopez's conduct, Plaintiff suffered and continues to suffer emotional distress that is serious or severe;

286.    Plaintiff is entitled to damages to be proven at trial.

### XXV. 20th CAUSE OF ACTION
### (Sampson; Defamation *per se*)

287.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

288.    Plaintiff is a private person.

289.    Through her actions described, Defendant Sampson knowingly and intentionally published to others false and defamatory statements that hurt Plaintiff in her profession as a teacher and that imputed serious sexual misconduct to her.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 36

290.    Sampson's defamatory statements about Plaintiff were so injurious and outrageous as to rise to the level of *defamatory per se.*

291.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XXVI. 21st CAUSE OF ACTION
### (Sampson; Defamation)

292.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

293.    Plaintiff is a private person.

294.    Through her actions described above and as set forth in the Composite Exhibit 4, incorporated herein, Defendant Sampson negligently published to others false and defamatory statements concerning Plaintiff without reasonable care as to the truth or falsity of those statements that resulted in actual damage to Plaintiff.

295.    As a direct and proximate result of the above described defamation, Plaintiff suffered damages to be proven at trial.

## XXVII. 22nd CAUSE OF ACTION
### (Sampson; Invasion of Privacy)

296.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

297.    Through her actions described above and as set forth in Composite Exhibit 4, incorporated herein, Defendant Sampson invaded Plaintiff's privacy.

298.    Sampson knowingly and intentionally published to others private facts about the life of Plaintiff.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 37

299. The private facts published by Sampson about Plaintiff would be highly offensive to a reasonable person, were offensive, and were not of public concern.

300. Plaintiff was damaged as a result of invasion of privacy.

301. Plaintiff is entitled to damages in an amount to be proven at trial.

### XXVIII. 23rd CAUSE OF ACTION
### (Sampson; Intentional Infliction of Emotional Distress)

302. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

303. Through her actions described above and as set forth in the Exhibits, hereto, Defendant Sampson's conduct was intentional or reckless. She intended her behavior when she knew or should have known that emotional distress would likely result as to Plaintiff;

304. At all times Sampson knew or should have known that her Group Texts could be discovered as evidenced by the repeated references to deleting the text messages as well as her statements about not wanting to get in trouble for her text messages.

305. Sampson's conduct was so outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community;

306. As a direct and proximate result of Sampson's conduct, Plaintiff suffered and continues to suffer emotional distress;

307. As a direct and proximate result of Sampson's conduct, Plaintiff's emotional distress was and is severe.

### XXIX. 24th CAUSE OF ACTION
### (Sampson; Negligent Infliction of Emotional Distress)

308. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 38

309.    Through her actions described above, Defendant Sampson's conduct was negligent. She knew or should have known that emotional distress would likely result as to Plaintiff;

310.    As a direct and proximate result of Sampson's conduct, Plaintiff suffered and continues to suffer emotional distress that is serious or severe;

311.    Plaintiff is entitled to damages to be proven at trial.

### XXX. 25th CAUSE OF ACTION
### (Harrell; Invasion of Privacy)

312.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

313.    Through her actions described above and as set forth in Composite Exhibit 4, incorporated herein, Defendant Harrell invaded Plaintiff's privacy.

314.    Harrell knowingly and intentionally published to others private facts about the life of Plaintiff, including but not limited to photographs of Plaintiff.

315.    The private facts published by Harrell about Plaintiff would be highly offensive to a reasonable person, were offensive, and were not of public concern.

316.    Plaintiff was damaged as a result of invasion of privacy.

### XXXI. 26th CAUSE OF ACTION
### (Harrell; Intentional Infliction of Emotional Distress)

317.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

318.    Through her actions described above and as set forth in the Exhibits, hereto, Defendant Harrell's conduct was intentional or reckless. She intended her behavior when she knew or should have known that emotional distress would likely result as to Plaintiff;

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 39

319.   At all times Harrell knew or should have known that by publishing the Ware Photo to Lopez, the photo would be used to ridicule and humiliate Plaintiff and would be discovered by her.

320.   Sampson's conduct was so outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community;

321.   As a direct and proximate result of Sampson's conduct, Plaintiff suffered and continues to suffer emotional distress.

## XXXII. 27th CAUSE OF ACTION
### (Harrell; Negligent Infliction of Emotional Distress)

322.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

323.   Through her actions described above, Defendant Harrell's conduct was negligent. She knew or should have known that emotional distress would likely result as to Plaintiff;

324.   As a direct and proximate result of Harrell's conduct, Plaintiff suffered and continues to suffer emotional distress that is serious or severe;

325.   Plaintiff is entitled to damages to be proven at trial.

## XXXIII. PRAYER FOR RELIEF AS TO INDIVIDUAL DEFENDANTS (NON SBHC)

326.   WHEREFORE, as to the individual Defendants (non SBHC), Plaintiff prays that the Court:

    a.   Award damages or other appropriate monetary relief to Plaintiff in an amount to be proven at trial as to each individual Defendant as to each cause of action, including actual and punitive damages;

    b.   Award Plaintiff the costs of suit including reasonable attorneys' fees; and

    c.   Award such additional relief as the interests of justice may require.

### PLAINTIFF DEMANDS TRIAL BY JURY.

Dated this <u>22nd</u> day of January, 2018.

Respectfully submitted,
**Chadwick Law Firm**

Robert P. Chadwick, Esq.
FBN: 0611824
Angelina M. Whittington, Esq.
FBN: 0019666
Chadwick Law Firm
3036 W. Bearss Ave.
Tampa, FL 33618
Ofc.: 813.264.1500
Fax: 813.968.1493
service@chad-law.com (secondary)
rchadlaw@gmail.com (primary)

VERIFIED COMPLAINT
DEMAND FOR JURY TRIAL - 41

1

## Verification pursuant to Florida Statute 92.525

2

"Under penalties of perjury, I, Kelley Ware Longanecker, declare that I
3 have read the foregoing Complaint and Demand for Damages and that the
facts stated in it are true."
4

5

6 Kelley Ware , Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT
DEMAND FOR JURY - 42